# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GREGORY HILBUS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) ) |
| HARDFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Gregory Hilbus, and for his claims and causes of action against Defendant, Hartford Life and Accident Insurance Company, states as follows:

## PARTIES

1. Gregory Hilbus ("Hilbus") is a resident and citizen of the State of Missouri.

2. Defendant The Hartford Life and Accident Insurance Company ("Hartford") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Hartford.

## JURISDICTION AND VENUE

3. Hilbus brings his claim pursuant to ERISA and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

1

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

STATEMENTS OF FACT

9. Hilbus worked as a production receiver/forklift driver for Church & Dwight Co., Inc. ("CD") since 2003. The duties of his occupation included: stacking boxes of detergent on pallets, shrink-wrapping, driving a forklift, and working on a production line picking and pulling product. The physical demands of his occupation were demanding. Hilbus was frequently required to lift and carry between 30 and 60 pounds.

10. Hilbus sustained serious injuries to his neck, back, and left shoulder on May 4, 2016. Following two shoulder surgeries and a series of lumbar and cervical epidural injections, Hilbus attempted to return to work in 2018.

11. However, in March 2018, a co-employee was accidentally struck by a forklift Hilbus was operating. Hilbus reported to his supervisor that the accident was caused by his inability to turn his head sufficiently to see his surroundings. Hilbus advised to his supervisor that he did not feel he could safely operate a forklift. As a result, Hilbus was terminated from his occupation. His last day of worked was January 5, 2018. Hilbus has not been employed in any capacity since.

12. At the time of his disability, Hilbus had LTD coverage through his employer. Aetna Life Insurance Company ("Aetna") underwrote the LTD plan and was the claims administrator.

13. On or about January 24, 2019, Hilbus sent Aetna a Notice of Claim which included an Application for Benefits, an executed authorization, a list of his health care providers, a Social Security application receipt, and other documents.

14. Aetna acknowledged the Notice on February 1, 2019 and began administering the claim.

15. In May 2019, Hilbus provided Aetna with a disability evaluation performed by Kala Danushkodi, M.D., on April 5, 2019.

16. On May 23, 2019, Aetna approved Hilbus's LTD claim, finding that he met the definition of "disability" contained in the policy and determining that his physical conditions prevented him from performing the duties his occupation required. Aetna began paying monthly LTD benefits.

17. On September 10, 2019, Aetna advised Hilbus that on September 22, 2019, the responsibility for administering his claim would be transferred to Hartford.

18. On November 20, 2019, Hartford advised Hilbus that his LTD benefits were terminated as of November 19, 2019, and no additional payments would be made. Hartford claimed that benefits were not payable because it had no proof to evaluate whether Hilbus's medical conditions prevented him from performing the duties of his occupation.

19. Hilbus's physical issues arise from lumbar and cervical spine impairments and a left shoulder and bicep injury.

20. CD sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

21. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

22. The Plan offered disability benefits to qualifying CD's employee Plan participants.

23. At all relevant times, whether administered with Aetna or Hartford, Hilbus has been a participant and covered person under the terms of the Plan.

24. Hartford is the current administrator of the Plan.

25. CD delegated or attempted to delegate the function of issuing LTD claim determinations to Hartford.

26. CD and Hartford entered into an administrative services contract through which CD paid Hartford for acting as claims administrator.

27. On December 9, 2021, Hartford reinstated benefits from the period of November 20, 2019, to January 15, 2020.

28. Hartford terminated benefits January 16, 2020.

29. Hilbus submitted an appeal to Hartford on October 1, 2021.

30. Hartford, shortly thereafter, reaffirmed its stance that benefits were denied.

31. On June 7, 2022, Hilbus submitted a second appeal.

32. On June 9, 2022, Hartford confirmed receipt of the second appeal and promised a decision on July 22, 2022.

33. On July 7, 2022, Hartford issued a letter communicating that they would need more time to review the appeal. Attached to this letter was also a copy of the Occupational Medicine Peer Review and a copy of the Employability Analysis Report. Hartford explained that Hilbus had 21 days from the date of the issued letter to respond to the peer review.

34. Hartford admitted that, per the findings of the peer review, Hilbus has some restrictions and work abilities.

35. On July 15, 2021, Counsel for Hilbus sent a response to Hartford disputing some of the findings of the peer review.

36. On July 27, 2022, Hartford denied Hilbus's second appeal for LTD benefits.

37. On July 28, 2022, Hilbus requested his entire claim file from Hartford.

38. On August 10, 2022, Hilbus received his claim file from Hartford.

39. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits.

40. It states:

> **Test of Disability** (GR-9N 06-010 02-NJ)
> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
>
> - You cannot perform the **material duties** of your **own occupation** solely because of an **illness, injury** or disabling pregnancy-related condition; and
> - Your work earnings are 80% or less of your **adjusted predisability earnings**.
>
> **After the first 24 months of your disability** that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness, injury** or disabling pregnancy-related condition.

41. "Material Duties" is defined as:

> Duties that:
>
> - Are normally needed for the performance of your **own occupation**; and
> - Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

42. The Plan defines "Reasonable Occupation" as:

> This is any gainful activity:
>
> - For which you are, or may reasonably become, fitted by education, training, or experience; and
> - Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**.

43. Hilbus, at all relevant times, and during the first 24 month period, met the terms of "disabled" under the own occupation standard of the policy.

44. Hilbus was unable to perform the material duties of his own occupation because of disability.

45. Hilbus's work earnings were 80% or less of his adjusted predisability earnings.

46. Hilbus is unable to perform the material duties of his own occupation. He meets this standard and is eligible for benefits as he falls within the Plan's definition of "disabled".

47. Hilbus is also unable to work any reasonable occupation due to a chronic neck injury affecting his range of motion that disrupts his ability to turn his head from side-to-side. The lack of ability to move his body in a basic motion to adjust to real-work situations, makes him not fit for any reasonable occupation. Not only is he unable to perform the material duties of his own occupation, due to this lumbar and cervical spine impairments, he is unable to perform any reasonable occupation.

48. Hartford purportedly performed a transferable skills analysis and determined that Hilbus was able to work largely fictitious occupations it created.

49. This is in error, for the following reasons:

    a. Hilbus has no transferable skills that remain intact;

    b. Hilbus does not have the ability to be retrained into any occupation;

    c. Hilbus has documented academic difficulty;

    d. Hilbus possesses no computer skills to speak of; and

    e. Hilbus lacks the ability to perform basic range of motion movements that are required for even sedentary jobs.

50. Hartford determined in its transferable skill analysis that Hilbus had transferable skills related to the following occupations:

    a. Routing Clerk;

    b. Order Caller;

    c. Order Clerk; or

      d. Food, Beverage and Mail Clerk.

51. Many of these occupations have not been updated by the DOT since 1977. These occupations, in the 2022 national economy, would all require the proficient use of computers to input orders in some electronic medium. Hilbus has documented academic difficulty and would not be able to work these occupations.

52. Hilbus has no experience with computers and no transferable skills related to computers which would enable him to reasonably perform the occupations suggested by the transferable skills analysis that Hartford performed.

53. Hilbus was seen September 1, 2020, by Terry Cordray ("Cordray"), M.S., CCM, CRC, ABVE, LPC. Cordray performed a Wonderlic Personnel Test (WPT) upon Hilbus. This test found that Hilbus scored a 12, which is below average. The results of the test found Hilbus, "Unlikely to benefit from formalized training setting; successful using simple tools under consistent supervision."

54. Cordray further opined:

> When one considers that Mr. Hilbus is 57 years old, has a limited high school education obtained 39 years ago, has always performed very limited skilled jobs in production assembly, janitor and forklift operation jobs, has no transferable skills, has no computer skills, has history of work-related injury, has history of two surgeries to the left upper extremity. Given this vocational profile in combination with his restrictions, it is my opinion that he is not "placeable" in the labor market and is totally vocationally disabled.

55. Cordray continues:

> I do not believe it is realistic to expect employers in the state of Missouri, hiring individuals to perform work, will realistically hire this 57-year-old individual with a limited education, no transferable skills, work history of performing janitor and forklift jobs, who has significant physical restrictions to the cervical spine and left shoulder.

7

56. Hilbus, in combination with his limited physical restrictions to the cervical spine and left shoulder impairments, and his learning impairments is unable to work any reasonable occupation for any day.

57. Hilbus, has at all relevant times, met the policies definition of "disability" under the Plan and is entitled to benefits.

58. Hilbus has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

59. Hilbus realleges the preceding paragraphs as if fully set forth herein.

60. Hilbus is entitled to all unpaid and accrued LTD benefits, as Hartford:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to properly consider Hilbus's medical impairments and resulting limitations; and

   c. Issued an unfavorable decision that was arbitrary and capricious.

61. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Hilbus is entitled to an award of actual damages for losses suffered.

62. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

63. Hartford has not satisfied its obligation to pay Hilbus's LTD benefits.

64. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Hilbus prays for judgment against Hartford for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
### 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

65. Hilbus realleges the preceding paragraphs as if fully set forth herein.

66. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

67. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

68. Hartford, the Plan's designated claims administrator, is a fiduciary.

69. Hilbus participated in and benefitted from the Plan as previously indicated.

70. Hartford's claims management practices are motivated by financial incentives in its administrative services agreement with CD.

71. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Hartford operates under an inherent conflict of interest.

72. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

73. Hartford breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage

9

and eligibility determinations;

    b. Engaging in a structural conflict of interest by assuming the role of both claims administrator and payor of benefits;

    c. Engaging in a structural conflict of interest by referring Hilbus' claim for peer review to a person with a conflict of interest and who is incapable of providing independent, unbiased opinions;

    d. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence; and

    e. Failing to produce to Hilbus a full and complete copy of his claim file and/or any other documents relevant to the denial of his claim;

74. Hartford denied Hilbus's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

75. Hartford failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Hilbus and the Plan's participants and beneficiaries generally.

76. Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

77. Hartford's violations of regulations alone allow Hilbus the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

78. Hartford's violations of federal regulation also subject its decision to *de novo* review.

79. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Hilbus prays for an order that Hartford retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the

10

Case 4:22-cv-00758-NKL   Document 1   Filed 11/18/22   Page 10 of 11

plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity; for an equitable accounting of benefits that Hartford has withheld; for the disgorgement of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF

11

Case 4:22-cv-00758-NKL   Document 1   Filed 11/18/22   Page 11 of 11